CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 17 2007
JOHN F. CORCORAN, CLERK
BY: J. Bright
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PETER O. ODIGHIZUWA, # 322270,<br>　　Plaintiff, | )<br>)<br>) |
| v. | )　Civil Action No. 7:06cv00720 |
| OFFICER S. STROUTH, et al.,<br>　　Defendants. | )<br>)<br>)　By: Hon. Michael F. Urbanski<br>)　United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Peter O. Odighizuwa ("Odighizuwa"), a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Odighizuwa alleges that while incarcerated at Red Onion State Prison ("ROSP"), defendants violated his constitutional rights by utilizing an excessive amount of force while removing his restraints, in failing to approve his transfer to a lower security institution, and by harassing him.[1]

This matter is now before the court on defendants' motion for summary judgment. The court notified Odighizuwa of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised him that his failure to reply to the defendants' motion may result in dismissal and/or summary judgment being granted for the defendants. As Odighizuwa filed a response to defendants' motion and the time allotted for filing any further response has expired, this matter is ripe for disposition.

---

[1] Odighizuwa moved to amend his complaint to name Gary Bass, Manager of Classification and Records, as the only defendant in his claim that his transfer to a lower security institution was improperly denied. Plaintiff's motion to amend is granted. However, as the court finds this allegation does not present a claim of constitutional magnitude, the court need not allow time for service of process against Bass before addressing the claim on its merits.

Upon review of the record, the court finds that Odighizuwa failed to properly exhaust his claim of excessive force against Correctional Officer Powers before filing this action. Additionally, the court finds that Odighizuwa's allegations that he was improperly denied a transfer from ROSP by defendant Gary Bass and that he has been harassed by Officer Powers while imprisoned at ROSP are insufficient to raise a claim of constitutional magnitude. Accordingly, the Court finds that all Odighizuwa's claims against defendants Officer Powers and Bass must be dismissed. However, the court finds that as Odighizuwa properly exhausted his claim of excessive force against Correctional Officer Strouth and has alleged sufficient facts to state a constitutional claim arising from this incident and as defendants have failed to respond to this allegation on the merits, the court finds that defendants' motion for summary judgment on this issue as to this defendant must be denied.

## I.

Odighizuwa raises three claims in the instant action related to his incarceration at ROSP. First, he claims that on December 5, 2004, after recreation, he returned to his cell and knelt to have his restraints removed. He then claims that defendants Officers Strouth and Powers removed his leg restraints, but while he was still in wrist restraints and kneeling, they struck him in the back of the head. He further claims that he immediately "passed out," fell on his stomach, and began calling for help. While he lay on his stomach, Officers Strouth and Powers pulled "very hard" on the immobilization strap attached to his arms and yelled for him to get up. He claims he then rose and his arm restraints were removed.

Following the confrontation, Odighizuwa used the call button in his cell to advise the control room monitor what had happened, and immediately thereafter, Sergeant Fleming came to

his cell, listened to Odighizuwa's complaints, and sent the nurse to examine Odighizuwa. The nurse provided him with one dose of 800 milligrams of Motrin and advised him to wash his wrists. Odighizuwa does not allege he needed or requested any further medical treatment at that time. However, he asserts that sometime thereafter he began complaining of ringing in his left ear and was provided with 375 milligrams of Naproxen[2] once a day for thirty days, but this did not relieve the ringing. He further alleges he has been advised by two prison physicians that the ringing may be the result of irritation of "the nerve which connects [his] head to [his] ear" which may never fully abate.

Second, Odighizuwa alleges that defendant Gary Bass, Manager of Central Classification Services in Richmond, improperly denied his transfer to Sussex I State Prison in the Eastern District of Virginia, even though his transfer had been approved at the institutional level.

Third, Odighizuwa complains that throughout his incarceration at ROSP he has been harassed by Officer Powers. However, he notes that he is not sure if this is the same Officer Powers who assaulted him on December 5, 2004, because during the December 5, 2004 incident, his glasses fell off and he could not clearly see the assaulting officer's face.

Odighizuwa avers that he has attempted to properly exhaust all of the claims raised in the instant action, but that various correctional officers have thwarted his attempts to exhaust by failing to process or return his grievances. Specifically, he claims that on December 5, 2004, he delivered an informal complaint regarding the assault to Sergeant Fleming and a formal grievance to Correctional Officer Sutherland, but received a response to neither. Additionally,

---

[2]Naproxen is an over-the-counter nonsteroidal anti-inflammatory drug. http://www.drugs.com/naproxen.html

he claims that about three weeks later he submitted another grievance to Correctional Officer Thacker regarding the assualt, but once again, he did not receive a response. In support of his assertions, Odighizuwa attached four Informal Complaint Forms. None of these complaints relate to the alleged use of excessive force nor to his allegedly improper denial of a transfer from ROSP. However, in the fourth Informal Complaint Form, Odighizuwa alleges on June 30, 2006 Officer Powers gave him "a finger" and during tray collection threatened him. Odighizuwa does not provide any evidence suggesting he filed any formal grievances. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. A-D)

## II.

Defendants contend that Odighizuwa failed to properly exhaust his claim of excessive force and, accordingly, assert that claim must be dismissed pursuant to 42 U.S.C. § 1997e(a). In support of this argument, defendants submitted the affidavit of Fonnie Taylor, the Grievance Coordinator at ROSP and the grievances Odighizuwa filed related to this claim. Taylor states that ROSP has in place an Inmate Grievance Procedure that prisoners can utilize to resolve complaints, appeal administrative decisions, and challenge institutional procedures and rules. Before filing a formal grievance, an inmate must make a good faith effort to resolve his complaint by filing an Informal Complaint Form. If the informal complaint is not resolved to the inmate's satisfaction, he may then file a formal grievance. (Defs.' Mot. Summ. J. Ex. I, Enc. A)

There are two levels of review of an accepted formal grievance. Initially a Level I review is conducted at the institutional level. If the inmate disagrees with or is dissatisfied with that decision he may appeal, and a Level II review is conducted at the Regional Level. Level II is the last level of review for most grievances. If a grievance is not accepted, it is returned to the

4

inmate and details are provided to the inmate as to why the grievance was not accepted. The inmate is then afforded a window of time to comply with the stated reasons for refusal and, after compliance, the grievance may be resubmitted. (Defs.' Mot. Summ. J. Ex. I, Enc. A)

Taylor avers that on January 4, 2005, Odighizuwa submitted an informal complaint stating that on December 5, 2004 he filed a grievance against Officer Strouth, but did not receive a response. The same day, Grievance Coordinator Mullins issued a response and advised Odighizuwa that there was no record of the allegedly filed grievance and that he should resubmit that grievance along with his informal complaint. Odighizuwa did not resubmit his grievance. (Defs.' Mot. Summ. J. Ex. I)

Odighizuwa filed a grievance on February 14, 2005 regarding the Institutional Classification Authority's ("ICA") decision that he should remain at ROSP. In that grievance he also asserted that he had been threatened while imprisoned at ROSP and he was assaulted by Officer Strouth on December 5, 2004. The grievance was returned the same day, and Odighizuwa was advised the information he provided was insufficient and he needed to resubmit the grievance with the ICA decision form. Odighizuwa resubmitted the grievance on February 22, 2005, and on March 21, 2005, Warden Tracy Ray provided a Level I response. Ray found that Odighizuwa's current assignment to ROSP was appropriate based on the nature of his crime and his high profile. The allegations related to the assault were not addressed, although Ray advised Odighizuwa that his grievance had been forwarded to the Institutional Investigator for investigation into the alleged threats and assault. Odighizuwa appealed this response. On April 28, 2005, a Level II response from the Regional Director was issued, and he too found Odighizuwa's assignment to ROSP was appropriate. Notably, in this response the Regional

Director also found that Odighizuwa's complaints related to the December 5, 2004 assault were unfounded based on the investigation completed by Institutional Investigator Adams. (Defs.' Mot. Summ. J. Ex. I, Enc. C)

As to Odighizuwa's remaining claims, defendants assert these claims should be dismissed because Odighizuwa failed to name proper defendants.

### III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

6

### A. Excessive Force Claim

Odighizuwa alleges that he was assaulted by Officers Strouth and Powers on December 5, 2004. Defendants assert this claim was not properly exhausted and, thus, must be dismissed. Defendants make no argument on the merits of this claim.

#### 1. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under § 1983. 42 U.S.C. § 1997e(a) (2000), Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005). Furthermore, prisoners must not just initiate timely grievances, but must also make a timely appeal of any denial of relief through all levels of available administrative review. Woodford, 126 S.Ct. at 2387 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies).

Odighizuwa alleges that his excessive force claim is exhausted because he filed multiple complaints and grievances related to the assault, but his grievances were destroyed and/or ignored and he did not receive any responses. Although defendants concede that Odighizuwa

filed at least one informal complaint regarding the alleged assault and one formal grievance in which the assault was mentioned and which he appealed through all available levels of administrative review, they argue this claim was not properly exhausted. There is no question that the informal complaint filed on January 4, 2005, in which Odighizuwa was directed to resubmit his formal grievance related to the assault, is insufficient to have exhausted this claim. However, the same cannot be said for the February 14, 2005 grievance.

Defendants assert that the February 14, 2005 grievance and the appeal of that decision through all levels of administrative review was insufficient to have exhausted the assault claim because in his initial grievance Odighizuwa grieved two issues, (1) the ICA decision that he should remain at ROSP, and (2) that he was assaulted on December 5, 2004 by Officer Strouth. Defendants assert that the institutional grievance policy allows an inmate to only grieve one issue on each formal grievance and, therefore, Odighizuwa should have filed a second grievance related to the alleged assault. However, the formal grievance was accepted as written. Odighizuwa was not directed to file two separate grievances nor was this policy mentioned in either the Level I or Level II response. (Defs.' Mot. Summ. J. Ex. I, Encl. C) Moreover, the assault was addressed in both responses. (Id.) In the Level I response the Warden advised Odighizuwa that his claims regarding the assault were forwarded to the Institutional Investigator. (Id.) Odighizuwa was not advised to refile his complaints regarding the assault in a separate grievance. (Id.) In the Level II response, the Regional Director specifically determined that Odighizuwa's allegations regarding the December 5, 2004 assault were unfounded based on the Institutional Investigator's findings. (Id.) Accordingly, it is clear that this claim was addressed at all levels of available review and is exhausted for purposes of 42 U.S.C. § 1997e(a).

Nonetheless, in the February 14, 2005 grievance Odighizuwa only states he was assaulted by Officer Strouth. There is no mention of any assaultive behavior or excessive use of force attributable to Officer Powers or any other officer. Accordingly, the court concludes that this grievance is insufficient to have exhausted this claim as to Officer Powers and, therefore, that the excessive force claim against Officer Powers must be dismissed. See McGee v. Fed. Bureau of Prisons, et al., 118 Fed. Appx. 471, 476 (10th Cir. 2004) (holding that to have properly exhausted a claim an inmate must have filed grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief); Johnson v. Johnson, et al., 385 F.3d 503, 517 (5th Cir. 2004) (stating that to properly exhaust a claim that a prison guard acted improperly, the grievance must name the guard and provide details of the incident); Curry v. Scott et al., 249 F.3d 493, 505 (6th Cir. 2001) (holding that a grievance specifically complaining of a beating at the hands of one guard was insufficient to exhaust claims against another guard who was not mentioned in that grievance).

### 2. December 5, 2004 Assault

To establish an Eighth Amendment excessive force claim against a prison official an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996). Odighizuwa alleges that without cause on December 5, 2004, Officer Strouth struck him in the back of his head and jerked the immobilization strap restraining his wrists. He claims that as a result of the assault he suffered bruises and cuts on his wrists and developed a constant ringing in his left ear. The court finds

that these allegations are sufficient to raise a claim of constitutional magnitude. As the defendants' motion for summary judgment did not address the merit of this claim, the court finds that at this time it must be allowed to proceed. Accordingly, defendants' motion for summary judgment on the issue of excessive force against Officer Strouth must be denied.

### B. Transfer from ROSP & Harassment

Defendants did not address the merits of Odighizuwa's claims that his transfer from ROSP was improperly denied and that he has been harassed by Officer Powers during his incarceration at ROSP. Instead defendants contend that Odighizuwa failed to name proper defendants to these claims. Odighizuwa named Gary Bass as a defendant to his claim that he was improperly denied a transfer from ROSP and, although expressing some uncertainity as to if the proper defendant Powers was served as relates to the harassment claim, he did name an identifiable employee at ROSP. Accordingly, the court finds that the named defendants are proper persons subject to liability under § 1983 and Odighizuwa's identification of these parties at this time is sufficient to withstand judgment on this basis. Regardless, as detailed below, the court finds that neither of these claims present an issue of constitutional magnitude and, therefore, must be dismissed.

### IV.

A petition may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).

10

## A. Transfer from ROSP

Odighizuwa asserts that Gary Bass improperly denied his transfer from ROSP. Odighizuwa does not contest his original placement in segregation at ROSP nor his continued placement in segregation. Rather, he contends that he could be managed just as well in the segregation unit at another institution in the Eastern District of Virginia and, thus, he should be transferred from ROSP to such an institution to distance himself from persons who may have been impacted by his crime. An inmate does not have a liberty interest in being housed at a particular institution or in avoiding isolation or separation from the general prison population unless the proposed transfer will subject the inmate to exceptionally more onerous living conditions, such as those experienced by inmates at a "Supermax" facility. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (holding that, despite the general rule that an interprison transfer does not implicate the Due Process Clause, a transfer to a so-called "Supermax" facility at which a prisoner would experience exceptionally more onerous conditions may implicate the Due Process Clause); Sandin v. Conner, 515 U.S. 472, 484 (1995) (finding that protected liberty interests are generally limited to freedom from restraints which impose atypical and significant hardships on inmate in relation to ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224 (1976) (stating that a valid conviction "empower[s] the State to confine [an inmate] in *any* of its prisons"); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature); Kennedy v. Blankenship, 100 F.3d 640, 642-43 n. 2 (8th Cir. 1996) (holding that placement in punitive

11

isolation was not atypical and significant deprivation even though prisoner faced restrictions in mail, telephone, visitation, commissary, and personal-possession privileges).

In Wilkinson, although the Supreme Court found a prisoner's transfer to a "Supermax" facility entitled him to some due process, the Court noted that the conditions at the "Supermax" prison, i.e., 24 hour lock down, constant cell lighting, recreation limited to one hour once a day in a small room, and the prohibition of conversation between inmates, were not alone atypical, as such conditions would likely apply to most solitary confinement facilities, and alone were not sufficient to entitle an inmate to due process. Id. The Court stressed that in this instance these inmates were entitled to due process before such a transfer because "[u]nlike the 30-day placement [in segregation] in Sandin, placement at [the "Supermax" prison] is indefinite . . . is reviewed just annually . . . [and] placement disqualifies an otherwise eligible inmate for parole consideration." Id. Further, stating "while any of these conditions standing alone may not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship" creating a liberty interest in avoiding placement in a "Supermax" institution. Id.

The facts of this case vary greatly from those in Wilkinson. Odighizuwa has not been transferred to a "Supermax" facility, instead he merely remains housed at the same facility in which he has been held since the fall of 2004.[3] Moreover, Odighizuwa concedes his placement

---

[3]To the extent Odighizuwa would allege his initial placement at ROSP was unconstitutional, it is time barred. Odighizuwa signed his complaint on November 26, 2006; accordingly, all claims arising more than two years earlier are barred by the relevant statute of limitations. See Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991) (finding that as there is no statute of limitations for § 1983 violations, the state limitations period governing personal injury actions should be applied); Va. Code Ann. § 8.01-243(a) (establishing a two year statute of limitations for personal injury actions). Thus, a claim regarding Odighizuwa's placement into segregation at ROSP on or about October 28, 2004 is time barred.

12

in segregation is appropriate and he has not alleged that if incarcerated in the segregation unit at some other facility he would not be subject to the same restrictions under which he now lives. Odighizuwa does not assert that he has not been afforded regular ICA hearings regarding his continued placement at ROSP nor that he has not been permitted to make a request to be transferred to another institution during his annual review. Finally, Odighizuwa has not presented any evidence which suggests his parole eligibility is any way related to his placement in segregation at ROSP. Accordingly, the court finds this claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Harassment

Odighizuwa also alleges that he has been harassed on occasion by an Officer Powers, who may or may not be the Officer Powers named in the assault claim. The constitution does not "protect against all intrusions on one's peace of mind," and verbal abuse and harassment by correctional employees alone does not state a constitutional claim. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991); see also Cullins v. Cundy, 603 F.2d 825 (10th Cir.1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right). Therefore, an institutional employees's verbal harassment of an inmate or idle threats made to an inmate, even if they cause an inmate fear, anxiety, or discomfort, do not present a claim of constitutional magnitude. Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life is not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate his constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only

13

accrues when the threats or threatening conduct result in a constitutional deprivation."); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (defamation does not implicate any constitutionally protected right); Keyes v. City of Albany, 594 F.Supp. 1147, 1155 (N.D.N.Y. 1984) ( "[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a 1983 claim."). Accordingly, even if Odighizuwa has been subjected to verbal abuse and harassment, while inappropriate and unprofessional, this does not amount to a constitutional injury. Therefore, the court finds this claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## V.

For the reasons stated above, the court finds that Odighizuwa failed to satisfy the requirements of 42 U.S.C. § 1997e(a) as to his claim of excessive force against Officer Powers. Further, the court finds that Odighizuwa's allegations that he was improperly denied a transfer from ROSP by Gary Bass and that he has been harassed by Officer Powers while imprisoned at ROSP are not issues of constitutional magnitude. Accordingly, the Court finds that all of Odighizuwa's claims against defendants Officer Powers and Gary Bass must be dismissed. However, the court finds that Odighizuwa properly exhausted his claim of excessive force against Officer Strouth and that he has alleged sufficient facts to state a constitutional claim. Accordingly, defendants motion for summary judgment on this claim as to Officer Strouth is hereby **DENIED**.

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

Entered this 17th day of April, 2007.

                                          /s/ Michael F. Urbanski
                                          Michael F. Urbanski
                                          United States Magistrate Judge