CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 06 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PETER O. ODIGHIZUWA, # 322270,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 7:06cv00720<br>) |
| OFFICER S. STROUTH, et al.,<br>    Defendants. | )<br>)<br>)   By: Hon. Michael F. Urbanski<br>)   United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Peter O. Odighizuwa ("Odighizuwa"), a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. § 1343. By Memorandum Opinion and Order entered April 17, 2007, the court dismissed all of Odighizuwa's claims except his claim that defendant Officer Strouth exerted an excessive amount of force against him on December 5, 2004.[1]

This matter is now before the court on Officer Strouth's motion for summary judgment. The court notified Odighizuwa of defendant's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised him that his failure to reply to the defendant's motion may result in dismissal and/or summary judgment being granted for the defendant. The court then granted Odighizuma limited discovery.[2] Defendant produced all ordered discovery to Odighizuwa and the court, and Odighizuwa relied on portions of that discovery in his response to defendant's motion. However, Odighizuwa asserts discovery was incomplete in that portions of his medical record were missing, and he asks for a continuance. Defendants admit that portions

---

[1] In the same Memorandum Opinion and Order, the court also dismissed all other named defendants but Officer Strouth. See Docket Nos. 41 & 42.

[2] See Docket No. 47.

of Odighizuwa's medical history, namely several sets of records related to his mental health care, were not provided to Odighizuwa, but were provided to the court. Accordingly, as Odighizuwa does not dispute the accuracy of his medical record and he indicates that his medical record will support his claims, the court will consider the entire medical record as additional evidence in support of his response to defendant's motion for summary judgment and denies Odighizuwa's motion for a continuance. Further, as Odighizuwa has made a detailed response to defendant's motion for summary judgment, the court finds this matter is ripe for disposition.

Upon review of the record, the court finds that Odighizuwa has not presented an issue of material fact as to the incident which occurred on December 5, 2004. When considering the evidence in its entirety, and in the light most favorable to Odighizuwa, there is no indication in the record that Odighizuwa suffered more than de minimis harm in the episode. Accordingly, defendant's motion for summary judgment is granted, and Odighizuwa's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.

As detailed more thoroughly in this court's April 17, 2007 Memorandum Opinion, Odighizuwa claims that on December 5, 2004, after removing his leg restraints, Officer Strouth struck him in the back of the head, causing him to lose consciousness. He further claims that while unconscious Officer Strouth pulled him to the tray slot via the immobilization strap attached to his wrist restraints, he eventually awoke, and the restraints were removed.

Odighizuwa then claims that shortly after the confrontation, he was examined by the institutional nurse who provided him with one dose of 800 milligrams of Motrin and advised him to wash his wrists. Odighizuwa does not allege he needed or requested any further medical

2

treatment at that time. However, he asserts that sometime thereafter he began complaining of ringing in his left ear and was provided with 375 milligrams of Naproxen[3] once a day for thirty days, but this did not relieve the ringing. He further alleges he has been advised by two prison physicians that the ringing may be the result of irritation of "the nerve which connects [his] head to [his] ear" which may never fully abate. As a result of the incident Odighizuwa claims he suffers from constant ringing and hearing loss in his left ear as well as emotional distress and humiliation.

Odighizuwa's medical record establishes that he was examined by nursing staff approximately three hours after the alleged assault. The exam revealed no redness, bruising, or broken skin on his head, neck, or wrists, and the nurse determined no treatment or medication was necessary. Odighizuwa did not complain of any injury related to the alleged assault until more than a month later, on January 7, 2005. That day he complained that his left ear had been ringing for about a month, but he had no nausea or dizziness. Odighizuwa was examined by the institutional physician on January 12, 2005. During the exam, Odighizuwa complained that his left ear had been ringing since the assault on December 5, 2004, but his hearing was otherwise normal. The physician noted based on Odighizuwa's reported symptoms he could have a suffered a mild concussion or contusion which caused tinnitus[4], and he prescribed Naproxen twice a day for two weeks.

---

[3]Naproxen is an over-the-counter nonsteroidal anti-inflammatory drug. http://www.drugs.com/naproxen.html.

[4]Tinnitus is a noise in the ears, such as ringing, buzzing, roaring, or clicking and is a subjective complaint which cannot be heard or measured by the examiner. Dorland's Illustrated Medical Dictionary 1914 (30th ed. 2003).

3

Odighizuwa did not seek further medical attention until February 8, 2005. At that time he again complained of ringing in his left ear, but additionally of itchiness around his eyes, mouth, and skin. The physician attributed his symptoms to allergies and only provided a nasal spray. Odighizuwa was examined by institutional medical staff eleven additional times, for a multitude of complaints ranging from vomiting "dust" to inability to urinate, yet he did not voice any further complaints of tinnitus until June 24, 2005. At that time, he complained his left ear was numb and ringing, but he was not having trouble hearing the nurse. He was examined by the institutional physician on June 29, 2005, who found no change in Odighizuwa's alleged symptoms and did not find further treatment necessary.

Although Odighizuwa continued to receive regular medical care and was examined numerous times by medical staff, he did not voice any additional complaints of tinnitus until December 29, 2005. He was examined by the institutional physician in January 2006. During the exam Odighizuwa stated he had no left ear pain, bleeding, or hearing impairment and he was not experiencing any vertigo, but he wanted to be referred to an ear, throat, and nose specialist. Additionally, he threatened to sue unnamed parties if he was not referred to a specialist. However, during the exam the physician found no evidence of any previous or current injury to Odighizuwa's head and/or neck. He specifically noted Odighizuwa's head and neck were free of any swelling, tenderness, or scarring and both ears were essentially normal in that his middle and inner ears were intact, the tympanic membranes were intact, and there were no effusions or fluid in his ear canals. Additionally, a head tilt test was negative, Odighizuwa's cranial nerves were intact, and he exhibited no focal difficulties. The physician noted that Odighizuwa's complaints of tinnitus were inconsistent with the objective clinical findings which were "essentially

normal," and he refused to refer Odighizuwa to a specialist. Since then, despite seeing institutional medical personnel nearly thirty times, Odighizuwa has not voiced any further complaints of tinnitus.

## II.

Defendant argues that any use of force against Odighizuwa on December 5, 2004 was a necessary response to Odighizuwa's refusal to comply with orders and was minimal in nature. Officer Strouth asserts that on December 5, 2004, Odighizuwa refused to comply with his order to rise and back to the tray slot to have his hand restraints removed after his leg restraints were removed. Accordingly, some amount of force was used to pull Odighizuwa to the tray slot, but there was no further use of force, and Officer Strouth specifically denies striking Odighizuwa.

In support of his motion for summary judgment, Officer Strouth has submitted the affidavit of Nurse P. Adams as well as a portion of Odighizuwa's medical records. Adams avows that she examined Odighizuwa approximately three hours after the alleged assault on December 5, 2004. On exam, she saw no bruising, redness, and/or raised areas on his head or wrists, and she determined that no treatment or medication was necessary. As detailed more throughly above, Odighizuwa's medical records establish that he voiced his first complaint of tinnitus more than a month after the alleged incident and, thereafter, only made sporadic complaints of tinnitus.

## III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not

5

treat the complaintant's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The Constitution does not prohibit the use of force against an inmate, rather it is only the excessive use of force which is unconstitutional. See Whitley v. Albers, 475 U.S. 312, 320-26. Accordingly, to establish an excessive force claim against a prison official an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996). The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

6

purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (1992); Williams, 77 F.3d at 762.

To satisfy the objective prong of an excessive force claim an inmate must prove the correctional officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency,'" and that he suffered something more than de minimis pain or injury. See Hudson, 503 U.S. at 7-9; Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998); Norman v. Taylor, 25 F.3d at 1263, n. 4.[5] However, inasmuch as some abuses can leave no lasting physical evidence of injury, the courts recognize that the objective component of an excessive force claim can be met by the pain itself, even if there was no enduring injury, or if the force used was of the sort repugnant to the conscience of mankind. Williams, 77 F.3d at 762 (quoting Norman, 25 F.3d 1259, 1264 n. 4).

---

[5] In Norman v. Taylor, the Fourth Circuit stated that "there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury." 25 F.3d at 1263, n. 4 (citations omitted).

Odighizuwa alleges that without cause on December 5, 2004, Officer Strouth struck him in the back of his head and jerked the immobilization strap restraining his wrists. He claims that as a result of the assault he suffered bruises and cuts on his wrists, he needed immediate medical attention, and he developed a constant ringing in his left ear. As a threshold matter, there is simply no evidence which suggests that Odighizuwa was struck by Officer Strouth. Odighizuwa was examined by Nurse Adams within hours of the alleged assault, and her records reveal she saw no redness, bruising, or broken skin on his head, neck, and/or wrists. Adams determined that no treatment or medication was necessary, and Odighizuwa did not voice any additional complaints of injury related to this event for several weeks.

In any event, even if Odighizuwa was struck and pulled by the immobilization strap, his medical records establish any injury was de minimis. Odighizuwa was examined within hours of the alleged assault, his medical record confirms there was no injury to his head, neck, and/or wrists, and he did not need medical care. Odighizuwa did not seek medical attention until more than a month after the alleged assault, but nonetheless claimed at that time he had suffered constant tinnitus. Odighizuwa was given an over-the-counter anti-inflammatory for two weeks, and the institutional physician determined no further treatment was necessary. Thereafter, Odighizuwa expressed only two other complaints of tinnitus, more than six months apart, the last of which was in December 2005, and the institutional physician determined no treatment was necessary on both occasions. Furthermore, when he was throughly examined by the institutional physician, following his last complaint of tinnitus, the physician found absolutely no evidence of injury to Odighizuwa's ears. In fact, the physician noted that Odighizuwa's ear exam was "essentially normal" with no signs of any injury or disturbance to Odighizuwa's inner and

middle ear, ear canal, or tympanic membrane and no evidence of nerve damage. Following this exam and to the present, Odighizuwa has not made any additional complaints of tinnitus or ear discomfort despite seeing institutional medical staff on nearly thirty additional occasions for a multitude of complaints. Accordingly, the court concludes that any alleged injury is de minimis and does not amount to a constitutional violation. See Stanley, 134 F.3d at 637-38 (finding a constitutionally insignificant injury where medical records did not substantiate prisoner's claims).

Additionally, Odighizuwa has failed to allege any facts which establish those extraordinary circumstances on which a plaintiff can prevail on an excessive force claim when he suffers only de minimis injury. Taylor, 155 F.3d at 483. "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997). Merely a lack of due care for the prisoner's interests and safety fails to show the use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319. Odighizuwa's injury was de minimis at worst, and there is simply nothing in the record which suggests that more than a de minimis amount of force was used. See Norman, 25 F.3d at 1262-63; see also Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. Nov. 23, 1993) (finding that a blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. Feb. 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993) (stating corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F.Supp. 148, 150 (D. Kan. 1992) (holding a single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F.Supp. 368, 374-75 (S.D.N.Y. 1992) (finding that a fist pushed against neck of inmate causing him to lose his breath

was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992); Neal v. Miller, 778 F.Supp. 378, 384 (W.D. Mich. 1991) (holding a backhand blow with fist to the groin of inmate was de minimis force). Accordingly, the court concludes that Odighizuwa has not presented a question of material fact as to his claim of excessive force and that the defendant is entitled to judgment as a matter of law.[6]

### IV.

For the reasons stated above, the court finds that Odighizuwa has failed to present any issue of material fact and that the defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is granted and Odighizuwa's complaint is dismissed.

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

Entered this 5th day of July, 2007.

Michael F. Urbanski
United States Magistrate Judge

---

[6] The Prison Litigation Reform Act provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Accordingly, to the extent Odighizuwa alleges he has suffered from humiliation and emotional distress as result of the alleged incident, this claim also fails. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir.1985), cert. denied, 480 U.S. 916 (1987).